2012-1533,-1534

_____

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
_____

KYD, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

POLYETHYLENE RETAIL CARRIER BAG COMMITTEE,
HILEX POLY CO., LLC, AND SUPERBAG CORPORATION,

Defendants-Cross Appellants.

_____

Appeal from the United States Court of International Trade
in case no. 09-CV-0034, Chief Judge Donald C. Pogue.
_____

**BRIEF OF DEFENDANT-APPELLEE, UNITED STATES**

STUART F. DELERY
Principal Deputy Assistant Attorney General
JEANNE E. DAVIDSON
Director
PATRICIA M. MCCARTHY
Assistant Director

OF COUNSEL:
SCOTT D. McBRIDE
Attorney
Office of the Chief Counsel
    for Import Administration
U.S. Department of Commerce

CARRIE A. DUNSMORE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20530
Tel: (202) 305-7576
Carrie.Dunsmore@usdoj.gov
Attorneys For Defendant-Appellee
United States

Dated:   December 27, 2012

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES……………………………………………………..1

STATEMENT OF THE CASE……………………………………………………….2

STATEMENT OF THE FACTS……………………………………………………...3

I.      Legal And Regulatory Framework……………………………………………3

II.     Course Of Proceedings Below……………………………………………….4

SUMMARY OF ARGUMENT………………………………………………...12

ARGUMENT…………………………………………………………………...14

I.      Standard of Review………………………………………………………...15

I.      The Trial Court Did Not Err In Sustaining The 94.62 Percent
        Antidumping Rate……………………………………………………………17

        A.      The 94.62 Percent Rate Is Supported By Substantial Evidence…….17

        B.      KYD's Challenges To The 94.62 Percent Rate Fail………………...24

        C.      The United States Takes No Position On PRCBC's Appeal………..32

III.    The Trial Court's Did Not Abuse Its Discretion In Holding That KYD Was
        Barred From Raising Its Untimely Eighth Amendment Claim…………….33

IV.     Even If KYD Is Allowed To Raise Its Eighth Amendment Claim, Binding
        Precedent Demonstrates That The Adverse Rate Applied By Commerce To
        King Pak's and Master Packaging's Entries Does Not Violate The
        Constitution………………………………………………………………...37

CONCLUSION………………………………………………………………...39

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Agro Dutch Indus. Ltd. v. United States*,
 508 F.3d 1024 (Fed. Cir. 2007)……………………………………………16

*Bond Street, Ltd. v. United States*,
 774 F. Supp. 2d 1251 (2011)…………………………………………..35

*Changzhou Wujin Fine Chemical Factory Co. v. United States*,
 2010 WL 3239213 (Ct. Int'l Trade August 5, 2010)……………………24, 27

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
 467 U.S. 837 (1984)…………………………………………………….15, 16

*Consolo v. Fed. Maritime Comm'n*,
 383 U.S. 607 (1966)……………………………………………………15

*Corus Staal BV v. United States*,
 502 F.3d 1370, 1381 (Fed. Cir. 2007)………………………………..16, 35

*Dupont Teijin Films USA, LP v. United States*,
 407 F.3d 1211 (Fed. Cir. 2005)………………………………………..15

*F.Lli DeCecco De Filippo Fara S. Martino S.p.A. v. United States*,
 216 F.3d 1027 (Fed. Cir. 2000)…..........................................................22, 23

*Gallant Ocean (Thailand) Co. v. United States*,
 602 F.3d 1319 (Fed. Cir. 2010)………………………………19, 22, 23, 33

*Hi-Shear Technology Corp. v. U.S. Air*,
 356 F.3d 1372 (Fed. Cir. 2004)………………………………………17, 36

*KYD, Inc. v. United States*,
 607 F.3d 760 (Fed. Cir. 2010)………………………………………passim

iii

*KYD, Inc. v. United States,*
    704 F. Supp. 2d 1323 (Ct. Int'l Trade 2010)……………………………2, 7, 8

*KYD, Inc. v. United States,*
    779 F. Supp. 2d 1361 (Ct. Int'l Trade 2011)……………………...…passim

*KYD, Inc. v. United States,*
    807 F. Supp. 2d 1372 (Ct. Int'l Trade 2012)………………………….passim

*KYD, Inc. v. United States,*
    836 F. Supp. 2d 1410 (Ct. Int'l Trade 2012)…………………………...passim

*Land Forwarders, Inc. v. United States,*
    172 F.3d 1338 (Fed. Cir. 1999)……………………………………………..17

*Matsushita Elec. Ind. Co. v. United States,*
    750 F.2d 927 (Fed. Cir. 1984)……………………………………………15

*Mittal Steel Point Lisas Ltd. v. United States,*
    548 F.3d 137 (Fed. Cir. 2008)……………………………………………35

*Ninestar Tech. Co. v. Int'l Trade Comm'n,*
    667 F.3d 1373 (Fed. Cir. 2012)……………………………………………36

*Novosteel SA v. United States,*
    284 F. 3d 1261 (Fed. Cir. 2004)……………………………………………36

*NTN Bearing Corp. v. United States,*
    74 F.3d 1204 (Fed. Cir. 1995)……………………………………………38

*One Lot Emerald Cut Stones & One Ring v. United States,*
    409 U.S. 232 (1972)……………………………………………………...38

*PAM v. United States,*
    347 F. Supp. 2d 1362 (Ct. Int'l Trade 2004)……………………………..38

*PAM, S.p.A. v. United States,*
    2008 WL 2673857 (Ct. Int'l Trade 2008)………………………………28, 29

*SNR Roulements v. United States*,
    402 F.3d 1358 (Fed. Cir. 2005)……………………………………………15

*Ta Chen Stainless Steel Pipe v. United States*,
    298 F.3d 1330 (Fed. Cir. 2002)……………………………………..28, 29

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2009)………………………………………………………16

*United States v. Ford Motor Co.*,
    463 F.3d 1267 (Fed. Cir. 2006)…………………………………………16

*United States v. Hosep Krikor Bajakajian*,
    524 U.S. 321 (1998)……………………………………………………37, 38

## STATUTES AND REGULATIONS

19 C.F.R. § 141.1(b)(1)………………………………………………………30

19 C.F.R. §351.212(b)………………………………………………………31

19 U.S.C. § 1516a(b)(1)(B)(I)……………………………………………..15

19 U.S.C. § 1673……………………………………..…………………………passim

19 U.S.C. §1675(a)(2)……………………………………………………..3, 31

19 U.S.C. § 1677b(a)………………………………………………………….3

19 U.S.C. § 1677e………………………………………………….....passim

19 U.S.C. § 1677m……………………………………………………………8

28 U.S.C. § 2637(d)…………………………………………………………16

## ADMINISTRATIVE DECISIONS

*Initiation of Antidumping and Countervailing Duty Administrative Reviews and Requests for Revocation in Part,*
    72 Fed. Reg. 54,428 (Dep't of Commerce Sept. 25, 2007)………………..4, 5

*Polyethylene Retail Carrier Bags from Thailand,*
    71 Fed. Reg. 1982, (Dep't of Commerce Jan. 17, 2007) …………………….6

*Polyethylene Retail Carrier Bags from Thailand,*
    72 Fed. Reg. 64580 (Dep't of Commerce Nov. 16, 2007)…………………….6

*Polyethylene Retail Carrier Bags from Thailand,*
    73 Fed. Reg. 52,288 (Dep't of Commerce Sept. 9, 2008)…………………5, 6

*Polyethylene Retail Carrier Bags from Thailand,*
    74 Fed. Reg. 2,511 (Dep't of Commerce Jan. 15, 2009)…………………..2, 7

## **STATEMENT OF RELATED CASE**

Pursuant to Rule 47.5 of the Rules of this Court, we state that no appeal from this action in the trial court was previously before this Court.    The United States is not aware of any other case pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in this appeal.

2012-1533,-1534

_____

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

KYD, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

POLYETHYLENE RETAIL CARRIER BAG COMMITTEE,
HILEX POLY CO., LLC, AND SUPERBAG CORPORATION,

Defendant-Cross Appellants.

_____

Appeal from the United States Court of International Trade
in case no. 09-CV-0034, Chief Judge Donald C. Pogue.

_____

**BRIEF OF DEFENDANT-APPELLEE, UNITED STATES**

**STATEMENT OF THE ISSUES**

1.      Whether the Department of Commerce's (Commerce) application of an

94.62 percent adverse facts available antidumping duty rate to merchandise exported

by Thai producers King Pak Ind. Co. Ltd. (King Pak) and Master Packaging Co. Ltd.

(Master Packaging), and imported by plaintiff-appellant KYD, Inc., (KYD), was

supported by substantial evidence and otherwise in accordance with law.

2.      Whether the trial court abused its discretion when it conclude that KYD

had failed to exhaust administrative remedies with regard to its claim that the antidumping duty rate applied by Commerce on remand was an "excessive fine or forfeiture," in violation of the Eighth Amendment of the United States Constitution.

3.    Whether the antidumping duty rate applied by Commerce violated the Eighth Amendment of the United States Constitution.

## STATEMENT OF THE CASE

This appeal concerns the third administrative review of the antidumping order on polyethylene retail carried bags from Thailand (carrier bags). *Polyethylene Retail Carrier Bags from Thailand*, 74 Fed. Reg. final(Dep't of Commerce Jan. 15, 2009) (final results of admin. review) (final results) A1719-20[1], and accompanying Issues & Decision Memorandum (Decision Memorandum), A1553-64.  KYD, an importer of carrier bags exported by King Pak and Master Packaging from Thailand, and Polyethylene Retail Carrier Bag Committee, Hilex Poly Co., LLC, and Superbag Corporation (PRCBC), domestic producers of carrier bags, each appeals the final judgment in *KYD, Inc. v. United States*, 807 F. Supp. 2d 1372 (Ct. Int'l Trade 2012) (*KYD IV*), A123-37, and relevant decisions made in the course of the proceeding, *KYD, Inc. v. United States*, 704 F. Supp. 2d 1323 (Ct. Int'l Trade 2010) (*KYD II*), A12-31; *KYD, Inc. v. United States*, 779 F. Supp. 2d 1361 (Ct. Int'l Trade 2011)

---

[1] "A _" refers to a numbered page in the joint appendix in this case.

(*KYD III*) A53-87; and *KYD, Inc. v. United States*, 836 F. Supp. 2d 1410 (Ct. Int'l

Trade 2012) (*KYD V*), A138-45.

## STATEMENT OF THE FACTS

## I.    Legal And Regulatory Framework

The antidumping duty statute is a remedial measure that provides relief to

domestic manufacturers by imposing duties upon imports of comparable products

that are sold in the United States at less than fair value.  The statute mandates that if

Commerce determines that "a class or kind of foreign merchandise is being, or likely

to be, sold in the United States at less than fair value," then an antidumping duty will

be imposed on the merchandise in the amount that the normal value exceeds the

export price for the merchandise.  19 U.S.C. § 1673.  Thus, in an antidumping

proceeding, Commerce determines whether subject merchandise is being, or is likely

to be, sold at less than fair value in the United States by comparing the export price

(the price of the goods sold in the United States) and the normal value of

merchandise.  *See* 19 U.S.C. §§ 1673, 1675(a)(2)(A).  It usually determines the

normal value of merchandise by considering sales of merchandise in the home

market, in a third country, or through a constructed value of the merchandise.  *See*

19 U.S.C. §§ 1677b(a)(1), (4).

In instances in which Commerce is unable to calculate a margin using a

3

respondent's reported data, Commerce is instructed to use facts available to make its determination. The use of facts available is warranted when the record lacks necessary information, or a party withholds information, fails to provide information by the deadline, significantly impedes a proceeding, or provides information but the information cannot be verified. 19 U.S.C. § 1677e(a). The statute permits Commerce to apply facts available with an adverse inference when an interested party fails to cooperate by not acting to the best of its ability to comply with a request for information. 19 U.S.C. § 1677e(b).

In determining a proper rate to apply as facts available with an adverse inference, the statute provides that Commerce may rely on information derived from the petition, a final determination in an investigation, previous final results, or any other information. Commerce is further required, "to the extent practicable . . . {to} corroborate that information from independent sources that are reasonably at {its} disposal." 19 U.S.C. § 1677e(b).

## II.    <u>Course Of Proceedings Below</u>

In September 2007, Commerce initiated the third administrative review of the antidumping duty order covering polyethylene retail carrier bags from Thailand. *Initiation of Antidumping and Countervailing Duty Administrative Reviews and Requests for Revocation in Part*, 72 Fed. Reg. 54,428, 54,429 (Dep't of Commerce

4

Sept. 25, 2007).  A156-58.  King Pak, as one of the three largest exporters of carrier bags from Thailand to the United States during the 2006-2007 period of review, was one of the companies specifically selected by Commerce for review, while Master Packaging initially was not selected for review.  A168.

Commerce issued its initial questionnaires to King Pak in December 2007, and in response, KYD, an importer of King Pak's carrier bags, contacted Commerce with regard to information in its possession that indicated a potential relationship between King Pak and the unselected respondent, Master Packaging.  A216-32. Commerce concluded that it had the resources to review Master Packaging, in addition to the other respondents already selected who had answered initial questionnaires, and issued Master Packaging a questionnaire as well.  A623-26.

King Pak failed to respond to Commerce's questionnaire.  *See Polyethylene Retail Carrier Bags from Thailand*, 73 Fed. Reg. 52,288, 52,289-90 (Dep't of Commerce Sept. 9, 2008) (prelim. antidumping admin. review) (preliminary results), A992-93.  Master Packaging responded to the questionnaire by indicating to Commerce that it would not hire legal representation, and providing untimely and procedurally and substantively deficient responses.  *Id.*  In July 2008, Commerce issued a supplemental questionnaire to Master Packaging, to which Master Packaging never responded.  *Id.*

5

Pursuant to 19 U.S.C. § 1677e(a) & (b), Commerce preliminarily concluded that both King Pak and Master Packaging had failed to provide the requested information, and that their failures had impeded the proceedings. *Id.* at 52,290, A993. Therefore, Commerce preliminarily determined that neither had cooperated to the best of its ability, and applied adverse facts available. *Id.* For both companies, Commerce assigned as adverse facts available the rate of 122.88 percent, which represented the highest rate for any proceeding found in the less-than-fair-value investigation. *Id.* This rate had been applied to King Pak in previous administrative reviews. *Id.* (referencing King Pak's margin in *Polyethylene Retail Carrier Bags from Thailand*, 71 Fed. Reg. 1,982, 1,983 (Dep't of Commerce Jan. 17, 2007) (final results of admin. review) and *Polyethylene Retail Carrier Bags from Thailand*, 72 Fed. Reg. 64,580 (Dep't of Commerce Nov. 16, 2007) (final results of admin. review)). Moreover, this Court subsequently upheld the application of the 122.88 percent assessment rate to KYD in litigation arising from the second administrative review of carrier bags. *KYD, Inc. v. United States*, 607 F.3d 760 (Fed. Cir. 2010) (*KYD I*).

KYD filed an administrative case brief with Commerce, arguing that it had made extraordinary efforts in its January 25, 2008 submission to assist Commerce in its administrative review, and that it was unlawful for Commerce to assign an

6

assessment rate based on adverse facts available to entries of King Pak's and Master

Packing's merchandise imported by KYD because KYD had participated to the best

of its ability.  A1230-78.

In January 2009, Commerce issued its final results and continued to apply

adverse facts available to all of King Pak's and Master Packaging's exports of

subject merchandise to the United States, including those imported by KYD.  74

Fed. Reg. at 2,511-12.  In response to KYD's arguments, Commerce explained that,

pursuant to section 19 U.S.C. § 1673g(b)(4), KYD's liability as an importer for King

Pak's and Master Packaging's antidumping duties was the "result of the statutory

scheme rather than either an adverse inference against KYD or some form of

punishment for its suppliers' non-cooperation."  A1558.  Thus, Commerce

calculated an adverse facts available margin in the Final Results for King Pak and

Master Packing exports of carrier bags from Thailand of 122.88 percent.  74 Fed.

Reg. at 2,512.

KYD challenged Commerce's final results in the trial court, contending that

Commerce improperly applied adverse facts available to the entries it imported,

because even if the exporters had not participated, KYD itself had acted to the best

of its ability.  *See, e.g. KYD II*, 704 F. Supp. 2d at 1331-35.  KYD suggested that

Commerce was obligated to calculate a separate assessment rate for any of King

7

Pak's and Master Packaging's entries that KYD had imported, and argued that the 122.88 percent margin, which was based on secondary information, pursuant to 19 U.S.C. § 1677e(c), was improperly corroborated and impermissibly punitive. *Id.*

The trial court remanded Commerce's determination, noting that Commerce had not explained why, pursuant to 19 U.S.C.§ 1677m(e), it had declined to use the United States purchase data supplied by KYD during the administrative review in determining a rate for the entries exported by King Pak and Master Packaging and imported by KYD. *Id.* at 1332.

In its first remand redetermination, Commerce concluded, pursuant to 19 U.S.C. § 1677m(e)(3) and (5), that KYD's data were so incomplete that they could not serve as a reliable basis upon which Commerce could make a determination. A1734-39. The data would also have posed undue difficulties for Commerce to calculate an antidumping duty margin without inventing fictitious antidumping duty margins unrelated to the export behavior of the exporter or producer. *Id*. KYD continued to claim that Commerce was required to calculate a unique margin for the entries it imported; it also contended that Commerce's continued use of the 122.88 percent dumping margin was a violation of the excessive fines and forfeitures clause of the Eighth Amendment. *See, e.g. KYD III*, 779 F. Supp. 2d at 1368-84.

In analyzing Commerce's first remand redetermination, the trial court

independently aggregated, adjusted, and attempted to compare price information

from different databases, generated a detailed scatter plot, and then made factual

presumptions as to the ability for Commerce to use KYD's United States purchase

data in its selection of a rate to apply to KYD's imports. *See id.* at 1381-84, *see also*

PRCBC's Brief at 8-24. The trial court held that Commerce was "entitled to select

an antidumping duty rate from the facts available" to apply to King Pak and Master

Packaging, but in light of its independent analysis, it concluded that the 122.88

percent rate was not "properly corroborated." *KYD III,* 779 F. Supp. 2d at 1378.

The trial court thus remanded the matter to Commerce to determine a new adverse

facts available (AFA) rate, and, to the extent that Commerce used secondary

information in accordance with 19 U.S.C. §1677e(c), to use a rate that was

corroborated appropriately. *Id.* at 1378 and 1382-383. With respect to KYD's

Eighth Amendment challenge to the 122.88 percent margin, the trial court stated that

it "need not address" the claim because a "statutorily proper AFA rate is remedial

rather than punitive." *Id.* at 1384, n. 24 (citing *KYD I*, 607 F.3d at 767-68).

In August 2012, Commerce filed its second remand redetermination with the

trial court. A1773-93. In accordance with the trial court's order, Commerce

determined a revised assessment rate for KYD's imports of King Pak's and Master

Packaging's exports of carrier bags from Thailand. *Id.* The majority of the trial

court's analysis in *KYD III* had focused on KYD's reported United States purchase price data. *KYD III,* 779 F. Supp. 2d at 1381-84. Accordingly, Commerce considered that information, as well as the individual sales transactions made by the two respondents for which margins were calculated during the review – Naraipak Co., Ltd. and Narai Packaging (Thailand) Ltd. (together, Naraipak) and Poly Plast (Thailand) Co., Ltd. (Polyplast). A1776-78. Commerce concluded that it could use KYD's information to "establish certain physical parameters" of its sales to use "as a guide in selecting an appropriate facts-available rate from Naraipak's or Polyplast's transaction-specific margins." A1777. Accordingly, as facts available, pursuant to 19 U.S.C. § 1677e(a), Commerce examined transactions reported by Naraipak and Polyplast to find sales of merchandise that were within the range of the eight physical characteristics shared by the merchandise imported by KYD. *Id.* The highest transaction-specific margin derived from the reviewed companies for merchandise that reflected those eight physical characteristics was 94.62 percent, and Commerce selected that margin as the adverse rate to apply to merchandise exported by King Pak and Master Packaging and imported by KYD, pursuant to 19 U.S.C. § 1677e(b). *Id.*

KYD challenged Commerce's second remand redetermination to the trial court, arguing that in "relying on secondary information," Commerce was "under an

10

obligation to evaluate the probative value of the rate by assessing its reliability and relevance through independent sources" and that the 94.62 percent rate did not reflect "commercial reality" under the corroboration requirements of the statute. A1799-1800. Commerce responded that the information it used was not secondary in nature, and therefore the requirements of 19 U.S.C. §1677e(c) did not apply, although "even if the corroboration requirement were in play" the "margin would still be relevant to King Pak and Master Packaging's commercial reality because the carrier bags share the same characteristics as those imported by KYD." *KYD IV*, 807 F. Supp. 2d at 1378.

The trial court sustained Commerce's second remand redetermination, finding that Commerce was not required to use KYD's United States pricing data in its calculations of an adverse rate, and that in "using KYD's own data to 'describe the bounds of transactions made by the cooperative respondents that [it] considered for use as adverse facts available,'" Commerce chose a rate that was supported by substantial evidence on the record. *Id.*

KYD then filed a motion for reconsideration of the trial court's decision, arguing for the first time since its comments on the first remand results that Commerce's remand rate of 94.62 percent violated the excessive fines and forfeitures clause of the Eighth Amendment of the United States Constitution. *See,*

11

*e.g. KYD V*, 836 F. Supp. 2d at 1413. KYD acknowledged it had not raised this issue in the remand proceedings before Commerce for the second remand redetermination, or in its comments to the trial court on the second remand, but claimed that its argument remained viable because it had raised the issue in the earlier proceedings with respect to the 122.88 percent rate. *Id.*

The trial court denied KYD's motion on three separate bases: 1) that KYD failed to exhaust its administrative remedies by not raising the Eight Amendment issue in its comments in response to Commerce's draft second remand redetermination; 2) that KYD had waived the Eighth Amendment issue by not raising it to the trial court in its challenge to the 94.62 percent rate and second remand redetermination; and 3) that the rate was "reasonably remedial" and "not punitive," consistent with Federal Circuit and Court of International Trade precedent, and therefore because the rate was statutorily proper, "any 8th Amendment issue" had "already been foreclosed." *Id.* at 1413-15.

These appeals followed.

## SUMMARY OF THE ARGUMENT

The exporters of the merchandise at issue, King Pak and Master Packaging, failed to act to the best of their abilities in responding to Commerce's questionnaires, warranting the application of adverse facts available to their entries. The trial court

held that, because the adverse rate applied in the final results was secondary information requiring corroboration under 19 U.S.C. § 1677e(c), and KYD's United States sales data did not corroborate the selected rate, Commerce was required selected a new rate that takes into account KYD's reported United States sales information.  On remand, Commerce derived the physical characteristics of the merchandise sold by the exporters to KYD and, using that data, selected an appropriate transaction-specific margin from the participating exporters as adverse facts available.  The ultimate rate of 94.62 percent selected by Commerce is not only consistent with the trial court's second remand order and analysis, it also is supported by substantial evidence and in accordance with law.

KYD claims that Commerce impermissibly applied adverse facts available to the merchandise it imported, and instead, Commerce was required to calculate an importer-specific assessment rate for KYD that used the reported sales data in its calculations.  However, this Court has already rejected the theory that Commerce must calculate a non-adverse rate for unaffiliated importers who actively participate in Commerce's proceedings, despite the failure of the exporters to participate.  *See KYD I*, 607 F.3d at 768.  Furthermore, KYD's reported United States sales data, alone, provided Commerce with no meaningful estimate of King Pak and Master Packaging's "actual" dumping margins.  Accordingly, Commerce's selection on

13

remand of an adverse facts available rate of 94.62 percent to apply to merchandise exported by King Pak's and Master Packaging, and imported by KYD, was supported by substantial evidence and otherwise in accordance with law.

Moreover, the trial court did not abuse its discretion in concluding that KYD had failed to exhaust its administrative remedies in arguing that the 94.62 percent margin violated the Eighth Amendment of the United States Constitution, when KYD failed to raise that issue before Commerce in its comments on the second remand results. Nor did the trial court abuse its discretion in holding that KYD had waived its Eighth Amendment argument in not raising the argument to the Court in challenging the second remand redetermination. This Court should therefore decline to consider KYD's untimely Eighth Amendment claim.

Finally, even assuming that KYD had properly preserved its Eighth Amendment claim, the trial court properly concluded that that there was no merit to it. KYD was legally responsible for paying the duties assessed with the goods it imported, pursuant to section 19 U.S.C. §1673g(b)(4), and Commerce's selection of an adverse rate on remand was supported by substantial evidence on the administrative record. Accordingly, KYD's Eighth Amendment claim was in no way an "excessive fine" under the Eighth Amendment of the Constitution.

14

# ARGUMENT

## I.    Standard of Review

When reviewing the trial court's judgment concerning a final determination of Commerce, this Court reapplies the trial court's standard of review. *Dupont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005); *SNR Roulements v. United States*, 402 F.3d 1358, 1361 (Fed. Cir. 2005). Accordingly, this Court will uphold Commerce's determination unless it is unsupported by substantial evidence or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(I); *Dupont Teijin*, 407 F.3d at 1215; *SNR Roulements*, 402 F.3d at 1361. Even if the Court could draw two inconsistent conclusions from the evidence, that does not prevent an administrative agency's findings from being supported by substantial evidence. *See Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 619-620 (1966); *Matsushita Elec. Ind. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).

In its determination of the lawfulness of Commerce's construction of the antidumping statute, the Court is guided by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). "If Congress has directly spoken to the precise question at issue . . . the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at

15

842-43.  If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether Commerce's interpretation is based upon a permissible construction of the statute.  *Id.* at 843.  The Supreme Court has reaffirmed that Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous."  *See United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009).  "[T]he whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency."  *Id.* at 887 (citation omitted).

With respect to the requirement that parties exhaust administrative remedies, Congress has delegated that determination to the trial court.  *See* 28 U.S.C. § 2637(d) ("In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies.").  As a result, this Court overturns the trial court's application of the exhaustion doctrine only if it finds that the trial court abused its discretion.  *See Corus Staal BV v. United States*, 502 F.3d 1370, 1381 (Fed. Cir. 2007) (holding that the trial court did not abuse its discretion in its application of the exhaustion doctrine); *Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007) (same); *cf. United States v. Ford Motor Co.*, 463 F.3d 1267, 1274 (Fed. Cir. 2006) (noting that where Congress has delegated a determination to the Court of

16

International, the Court will review that determination for abuse of discretion).  A

court abuses its discretion when: "(1) the court's decision is clearly unreasonable,

arbitrary or fanciful; (2) the decision is based upon an erroneous construction of the

law; (3) the trial court's factual findings are clearly erroneous; or (4) the record

contains no evidence upon which the [trial] court could have rationally based its

decision."  *Hi-Shear Technology Corp. v. U.S. Air*, 356 F.3d 1372, 1378 (Fed. Cir.

2004) (citing *Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1341 (Fed. Cir.

1999)).

## II.   The Trial Court Did Not Err In Sustaining The 94.62 Percent Antidumping Rate

### A.   The 94.62 Percent Rate Is Supported By Substantial Evidence

Commerce's 96.62 percent antidumping duty rate which was applied to King

Pak's and Master Packaging's exports was derived from a reviewed respondent's

transaction-specific information as adverse facts available.  That rate is supported by

substantial evidence and is otherwise in accordance with law.  KYD claims that

because it was an "innocent domestic interested party," KYD Br. at 35, unrelated to

the exporters during the period of review and participated to the best of its ability in

the administrative review, Commerce was restricted in the adverse facts available

rate it could lawfully apply to the merchandise KYD imported.  This argument fails.

As Commerce explained in both the first remand redetermination and the second

17

remand redetermination, any calculation using KYD's reported United States purchase prices would be meaningless without a normal value to compare to that information.  A1746-50; A1796-91.  Moreover, to the extent that KYD argues that Commerce was required to calculate an importer-specific rate exclusive of adverse inferences for KYD, it has already argued and lost this identical claim before this Court in *KYD I*.  *See KYD I*, 607 F.3d at 768.  Because Commerce's selection of an adverse facts available rate is in accordance with the requirements of 19 U.S.C. §§1677e(a) & (b), this Court should affirm the trial court's holding affirming the rate.

There is no dispute that the Thai exporters of carrier bags, King Pak and Master Packaging, failed to act to the best of their abilities in responding to Commerce's questionnaires during the period of review.  The trial court affirmed in *KYD III* that because the exporters "were uncooperative" Commerce was "required to use facts otherwise available to determine the amount of dumping for each of these entries."  *KYD III*, 779 F. Supp. 2d at 1368 (citing to 19 U.S.C. §1677e(a)).  Furthermore, the trial court held that "precedent permits Commerce to use adverse inferences in selecting that rate."  *Id.* (citing *KYD I*, 607 F.3d at 762 and to 19 U.S.C. §1677e(b)).

The trial court determined, however, that the "remaining question in this case"

was whether the 122.88 percent rate that Commerce selected for entries of King Pak's and Master Packaging's merchandise imported by KYD was "properly corroborated and supported by substantial evidence with respect to these entries." *Id.* The trial court emphasized in its analysis that the 122.88 percent rate was "secondary information," requiring corroboration under 19 U.S.C. §1677e(c), and through its own independent analysis of the facts on the record, the trial court attempted to compare price information from different databases, generated a detailed scatter plot, and made factual presumptions as to Commerce's ability to use KYD's United States purchase data in its selection of a rate to apply to KYD's imports. *See KYD III*, 779 F. Supp. 2d at 1380-84; *see also* PRCBC's Brief at 8-24.

The trial court concluded that the 122.88 percent rate was not "properly corroborated" and Commerce was ordered to on remand to determine a new adverse rate, and, if Commerce used secondary information in accordance with 19 U.S.C. §1677e(c), the agency was ordered to use a rate that was appropriately corroborated. *KYD III*, 779 F. Supp. 2d at 1382-383 (citing *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010)). The trial court explicitly stated that "nothing in the instant decision precludes Commerce from ultimately instructing Customs to liquidate these entries at some (total adverse facts available) rate." *KYD III*, 779 F. Supp. 2d at 1368.

In accordance with the trial court's order, Commerce determined a revised assessment rate for KYD's imports of King Pak's and Master Packaging's exports of carrier bags from Thailand in its second remand redetermination. A1776-78. Specifically, Commerce reviewed the United States sales data placed on the administrative record by KYD, as well as the individual sales transactions made by the two respondents for which margins were calculated – Naraipak and Poly Plast. *Id.* Commerce then concluded that it could use KYD's information to "establish certain physical parameters" of KYD's sales to use "as a guide in selecting an appropriate facts-available rate from Naraipak's or Polyplast's transaction-specific margins." *Id.*

Commerce further explained that one factor that may influence pricing behavior is the physical characteristics of (the carrier bag) models being examined. *Id.* Of the thirteen physical characteristics of carrier bags Commerce used in all previous investigations and administrative reviews, KYD submitted information on eight of those characteristics for the products it imported. *Id.* Accordingly, as facts available, pursuant to 19 U.S.C. § 1677e(a), Commerce examined transactions reported by Naraipak and Polyplast to find sales of merchandise that were within the range of those eight physical characteristics. *Id.* Commerce stated that through this analysis it was "ensuring that the sales by the responding companies we consider are

20

sales of products that are reasonably similar to KYD's imports." *Id.* Pursuant to 19

U.S.C §1677e(b), Commerce then selected as the adverse rate the highest

transaction-specific margin calculated for Naraipak or Polyplast that met all eight

physical parameters. *Id.*[2]

Section 19 U.S.C. 1677e(c) requires Commerce, "to the extent practicable," to

corroborate secondary information with "independent sources that are reasonably at

their disposal." Secondary information is information which is not "obtained in the

course of an investigation or review." 19 U.S.C. §1677e(c). In the final results, the

adverse rate of 122.88 percent applied to King Pak and Master Packaging's exports

by Commerce was derived from the petition in the investigation, and therefore was,

by definition, secondary information. On the other hand, the 94.62 percent rate

applied to those exports as a result of the second remand redetermination was not

based on secondary information. Instead, the rate was derived from an actual

---

[2]    KYD states in its brief that Commerce determined a rate for KYD "using the highest single transaction for a cooperative party as the basis for the rate." KYD's Brief at 5. This is factually incorrect. As the trial court recognized in *KYD IV*, Commerce rejected the "transaction-specific margin of 108.64 percent because" that transaction shared fewer physical characteristics with the merchandise imported by KYD. *KYD IV*, 807 F. Supp. 2d at 1378. Commerce indicated in the second remand redetermination that the transaction yielding the rate of 108.64 percent shared only seven of the physical characteristics with KYD's imported merchandise, and therefore was "less similar to the merchandise KYD purchased than the merchandise corresponding to the transactions" considered by Commerce, which shared all eight of the reported physical characteristics. A1787.

transaction-specific margin calculated for one of the reviewed companies during the administrative review.  Accordingly, Commerce did not conduct a corroboration exercise in the second remand redetermination.

KYD challenges the 94.62 percent rate, citing to *F.Lli DeCecco De Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000), to contend that "precedent establishes that if an adverse rate is selected, it must reasonably reflect the rate that would have applied had the party cooperated, plus a reasonable additional amount to deter noncompliance."  KYD's Brief at 31-32.  KYD argues that the rate selected by Commerce does not meet this requirement.  In addition, KYD cites to *Gallant Ocean*, to contend that that any selected rate must be a "reasonably accurate estimate" of the rate that would have been applied had the entity cooperated.  602 F. 3d at 1323.

However, both of these cases involved Commerce's requirement to corroborate secondary information, pursuant to 19 U.S.C. §1677e(c).  In *F.Lli DeCecco*, the Court explained that the corroboration requirement of the statute exists to "temper deterrent value" and "block any temptation by Commerce to overreach reality in seeking to maximize deterrence." *F.Lli DeCecco*, 216 F.3d at1032.  Further, in *Gallant Ocean*, the Court held that Commerce wrongfully concluded that the petition rate applied as adverse facts available was corroborated and therefore,

22

the rate selected was "aberrational." *Gallant Ocean* at 1323.  KYD's reliance on this Court's corroboration language in *F.Lli DeCecco* and *Gallant Ocean* is misplaced, because those decisions do not apply in a case such as this, in which Commerce applied a rate as facts available actually "obtained in the course of the review."

Moreover, in this case Commerce limited its analysis solely to the actual commercial transactions of examined respondents that involved merchandise that physically matched that of the transactions KYD purchased during the period of review.  A1776.  Therefore, the rate Commerce determined on remand fulfilled the deterrent value of an adverse rate and was grounded in the "reality" of the commercial experience of both KYD and the respondents selected for individual examination in the administrative review.

For this reason, the trial court sustained Commerce's selected rate, holding that by "using KYD's own data to 'describe the bounds of transactions made by the cooperative respondents that [it] considered for use as adverse facts available   . . . Commerce chose a rate that, on this record, could reasonably be accepted as an approximation of KYD's rate, albeit with a built in increase intended as a deterrent to non-compliance." *KYD IV*, 807 F. Supp. 2d at 1378.  Further, the trial court held that "because King Pak and Master Packaging did not provide sufficient useable information for the record, Commerce's transaction-specific margin for an adverse

23

rate does not conflict with statutory requirements and Commerce's selection is based on substantial evidence." *Id.*

**B.     KYD's Challenges To The 94.62 Percent Rate Fail**

KYD presents several additional challenges to the validity of Commerce's selected rate, going so far as to argue that "any assessments, applied to KYD based on Adverse Facts are necessarily out of proportion to the gravity of the offense, since KYD did not actually commit any offense." KYD's Brief at 19. None of these arguments, however, are grounded in facts or law that prove KYD's claims.

KYD's foremost claim is that Commerce was required to "complete one-half of the equation" and calculate a specific antidumping duty margin for KYD's imports, using KYD's purchase prices. KYD's Brief at 30. KYD claims that Commerce's explanation on remand that it could not use KYD's reported purchase prices to determine an adverse rate "is arbitrary and capricious and otherwise not supported by law," and it cites to Commerce's analysis on remand in *Changzhou Wujin Fine Chemical Factory Co. v. United States*, 2010 WL 3239213 (Ct. Int'l Trade August 5, 2010), (aff'd in part, rev'd in part and remanded by *Changzhou Wujin Fine Chemical Factory Co. v. United States*, -- F.3d --, 2012 WL 6554707 (Fed. Cir. Dec 17, 2012)). *Id.* at 29.

In its first remand redetermination, Commerce explained that it could not use

24

the incomplete United States purchase data KYD provided to calculate importer-specific dumping margins, because in order for it to calculate a reliable dumping margin, certain data must be on the administrative record.  A1734-35.  Commerce further explained that generally, it must have three sources of data:  "the respondent's U.S. sales, the respondent's home-market sales (or third-country sales), and in certain circumstances, the costs to produce the respondent's merchandise."  *Id.*  It explained that, absent this information, Commerce cannot determine whether a company has sold merchandise below normal value in the United States or calculate a margin of dumping based on that company's own data and pricing behavior.  *Id.*  In this case, although KYD provided Commerce with certain information regarding its purchases from King Pak and Master Packaging, it did not provide Commerce with either home-market sales data or King Pak's or Master Packaging's cost data, A1735, or with reported price adjustments such as international freight and marine insurance that would be needed to calculate export price.  A1738-39.  Thus, Commerce reasonably determined that the information was far too incomplete to serve as a reliable basis for reaching an applicable determination.[3]

---

[3]  With respect to the discussion at in footnote 7 of PRCBC's brief that the Government agreed with KYD that it provided international purchase prices in a usable format, we agree with PRCBC that record evidence demonstrates that such information was *not* provided in a usable format, *see, e.g.* A854-94, and we

Commerce also explained that KYD stated that it did not "know the production specifications for the percentages of high-density polyethylene resin, low-density polyethylene resin, low linear-density polyethylene resin, and color concentrate," and did not "report several movement expenses." A1738. "With incomplete physical characteristics concerning KYD's purchases from King Pak and Master Packaging," Commerce concluded that it could not make a reasonable comparison of products "even if we had complete physical characteristics for home-market sales or cost data. *Id.* With respect to movement expenses, Commerce also explained that absent such information its "calculation of export prices would be incomplete." A1739.

For these reasons, the trial court sustained Commerce's determination that the information provided by KYD was so incomplete that Commerce could not use the reported prices in its calculations. *KYD III*, 779 F. Supp. 2d at 1378. Nothing in KYD's brief undermines the reasonableness of Commerce's determination on this point, nor points to any error on behalf of the trial court in affirming that determination. Commerce has considerable discretion regarding which information to use as an adverse inference, 19 U.S.C. § 1677(e)(b), and, as demonstrated above, Commerce's determination to reject KYD's proposed data and use a transaction-

apologize for any confusion that our submission before the trial court may have caused on this issue.

26

specific margin was well within that discretion.

KYD's reliance upon the agency's remand redetermination in the *Changzhou* litigation is also misplaced. The facts of that decision are completely distinguishable from this case. The plaintiff in *Changzhou* was a company in a nonmarket economy that had not been examined seeking separate rate treatment. *Changzhou*, 2010 WL 3239213 at *1. In accordance with its practice, Commerce derived a margin for non-examined respondents using the simple average of the adverse rate applied to the nonmarket economy entity and the zero rate calculated for the reviewed respondent. *Id.* Unlike the plaintiff in *Changzhou*, KYD imported merchandise subject to a rate based on adverse facts available, not an "all others" or "separate rate." Further, unlike the plaintiff in *Changzhou*, the exporters in this case did not act to the best of their abilities during the administrative review, and there is no additional statutory provision or legislative history that would require Commerce to create a dumping margin for an importer using the limited data that it provided in the course of the review. In addition, unlike in *Changzhou*, the rate applied here was selected from an examination of the calculated transaction-specific margins of the reviewed respondents. Thus, Commerce's methodology and calculations on remand in the *Changzhou* litigation in no way undermine Commerce's selection of an adverse facts available rate in the second remand redetermination.

KYD also argues that because the selected rate is "43 times the 'all others' rate," it is impermissibly "punitive" and "shocks the conscious."  KYD Brief at 33-34.  Such a claim, however, is groundless because such a comparison is irrelevant – the rate applied to King Pak's and Master Packaging's merchandise has nothing to do with the "all others rate."  The "all others rate" is set by Commerce at the completion of the less-than-fair value investigation, pursuant to 19 U.S.C. §1673d(c)(5), and applies only to those "exporters and producers" who have not been reviewed.  King Pak and Master Packaging, on the other hand, were specifically selected for review in this proceeding, and elected not to participate, warranting the application of an adverse facts available rate.

Furthermore, KYD is neither an exporter nor a producer, and therefore the "all others rate" does not apply to KYD.  Accordingly, KYD's citation to the "multiples" in the customs fraud statute ("8 times the duty loss") and the Court of International Trade's expressed concerns in applying the corroboration provision in *PAM, S.p.A. v. United States*, 2008 WL 2673857 (Ct. Int'l Trade 2008) ("9 times higher than PAM's calculated dumping margins for the years surrounding this administrative review") are of no relevance.  In *PAM*, the trial court sustained the rate applied by Commerce as adverse facts, citing to *Ta Chen Stainless Steel Pipe v. United States*, 298 F.3d 1330, 1339 (Fed. Cir. 2002), as "constraining" its ability to find the

magnitude of the rate at issue to be uncorroborated. *PAM,* 2008 WL 2673857 at *4.

Moreover, as is the case with the other cases relied upon by KYD in its arguments

discussed above, both *PAM* and *Ta Chen* involved an analysis of Commerce's

corroboration of secondary information, pursuant to 19 U.S.C. §1677e(c), and

therefore do not pertain to the rate applied by Commerce in the second remand

redetermination.

Finally, in addition to challenging the validity of the rate applied as adverse

facts available by Commerce on remand, KYD also argues that because it is an

unaffiliated importer, the use of "adverse facts," as opposed to the use of neutral

facts, was necessarily "excessive," and therefore was, in of itself, impermissible.

KYD Brief at 22.  KYD claims that it is an "innocent domestic interested party" and

that Commerce was required to calculate an importer-specific margin for KYD

related to "the prices at which it purchased the imported merchandise," exclusive of

any adverse inferences.  KYD Brief at 35.  Furthermore, KYD claims that a

"properly calculated" rate, specifically "assigned to KYD," "would be less than that

assigned to the cooperative mandatory respondents and certainly not exceed the rate

for one respondent by a factor of nearly three and the other by a factor of more than

10." KYD Brief at 23.

Direct precedent from this Court demonstrates the unsustainability of this

argument. The Court previously addressed KYD's "unaffiliated importer" argument in the litigation covering the previous administrative review of this antidumping order in *KYD I*. *KYD I*, 607 F.3d at 768. In that case, the Court rejected KYD's claim that it should not be required to pay high duties because of its participation in the administrative review. *Id.* KYD argued that Commerce should have assigned it an assessment rate different from the antidumping duty rate assigned to King Pak, claiming that it was "improper to impose a high rate against an importer such as KYD that is not related to an uncooperative party such as King Pak." *Id.*

This Court held that such an argument was "unpersuasive," and noted that "by statute and regulation, the importer is legally responsible for paying the assessed duties associated with the goods it imports." *Id.* (citing to 19 U.S.C. §1673g(b)(4), (providing that importers "shall pay, or agree to pay on demand, to the customs officer the amount of antidumping duty imposed under section 1673") and 19 C.F.R. § 141.1(b)(1) (stating that "[t]he liability for duties, both regular and additional, attaching on importation, constitutes a personal debt due from the importer to the United States which can be discharged only by payment in full of all duties legally accruing, unless relieved by law or regulation")). The Court explained that, under the "antidumping duty statutes Commerce is directed to set the assessment rate based on the calculated dumping margin" and that KYD pointed to no statute or

30

regulation "that would entitle independent importers to a different assessment rate" from affiliated importers. *Id.* (citing to 19 U.S.C. §§1673e(c)(3), 1675(a)(2)(C) and 19 CFR §351.212(b)).

In addition, this Court cited the logical policy reasons behind the structure of the statute. It noted that KYD's argument would "allow an uncooperative foreign exporter to avoid the adverse inference permitted by statute simply by selecting an unrelated importer, resulting in easy evasion of the means Congress intended for Commerce to use to induce cooperation with its antidumping investigations." *Id.* at 768. The Court conceded the prospect that domestic importers will have to pay enhanced antidumping margins because of the uncooperativeness of the exporters from whom they purchase goods may, in some cases, result in the imposition of costs on an individual importers that the importer is unable to avoid. *Id.* It held that, "in the aggregate" however, the importers' exposure to enhanced antidumping duties "seems likely to have the effect of either directly inducing cooperation from the exporters with whom the importers deal or doing so indirectly, by leaving uncooperative exporters without importing partners who are willing to deal in their products." *Id*.

KYD does not distinguish the holding of *KYD I* in its brief before this Court. Indeed, KYD's brief does not contain a single citation to this controlling precedent

at all – despite the fact that, as the named party in that case, it is certainly aware of this Court's precedent.  The Court should thus disregard KYD's claim that Commerce was legally required in this administrative review to calculate a non-adverse margin for entries of certain retail bags from Thailand imported by KYD on the sole basis that KYD, and not its exporters, participated in the administrative review.

 For the reasons stated above, KYD's challenges to Commerce's application of an adverse rate to King Pak's and Master Packing's exports, derived from the transaction-specific margins of the reviewed respondents, are groundless in law and fact, and this Court should sustain the trial court's affirmation of the agency's antidumping duty rate.

### C.    <u>The United States Takes No Position On PRCBC's Appeal</u>

In *KYD III*, the trial court ruled that the 122.88 percent rate that Commerce had assigned to KYD was uncorroborated, and it remanded the case to Commerce to select a lower rate.  *KYD III,* 770 F. Supp. 2d at 1377-78.  In response, Commerce issued a second redetermination revised KYD's assessment rate, under respectful protest, from 122.88 to 94.62.  A1776.  JA1773-93.  PRCBC appeals this trial court's decision in *KYD III*.  The United States has not appealed that decision, and thus takes no position on PRCBC's appeal.

32

### III. The Trial Court's Did Not Abuse Its Discretion In Holding That KYD Was Barred From Raising Its Untimely Eighth Amendment Claim

KYD challenges the assessment of the 94.62 percent rate as punitive and in violation of the Eighth Amendment to the United States Constitution.  KYD's Brief at 15-23.  KYD ignores, however, that the trial court held in *KYD V* that KYD was barred from making an Eighth Amendment claim because it both failed to exhaust its administrative remedies and because it waived the "issue by not raising it before the court at the proper time."  *KYD V,* 836 F. Supp. 2d at 1414.  KYD makes no reference to this decision by the trial court in its brief before this Court.  KYD cannot demonstrate that the trial court abused its discretion in barring its claim, particularly where it ignores entirely the trial court's rejection of those arguments on procedural grounds in the first instance.  This Court should affirm the trial court's holding in *KYD V* and reject KYD's Eighth Amendment arguments.

In the context of the first remand redetermination, KYD raised a challenge under the Eighth Amendment that the 122.88 percent rate then being applied by Commerce as adverse facts available, was punitive rather than remedial.  The trial court rejected this claim, stating in *KYD III* that it "need not address KYD's Eighth Amendment claim," because a "statutorily proper [adverse facts available] rate is remedial rather than punitive …and a 'punitive' rate is statutorily improper."  *KYD III,* 779 F. Supp. 2d at 1384, fn. 24, (citing *KYD I*, 607 F.3d at 767-68 and *Gallant*

33

*Ocean*, 602 F.3d at 1323).

In the second remand redetermination, in accordance with *KYD III*, Commerce selected a different adverse rate, 94.62 percent. A1778. Although KYD submitted comments with Commerce on the draft remand redetermination, *see* A1764-71, and filed remand comments to the trial court following Commerce's issuance of the second remand redetermination, A1794-1814, KYD made no mention of Eighth Amendment concerns with respect to the new adverse rate applied to the merchandise it imported in either of these submissions.

Following the trial court's issuance of *KYD IV*, affirming the second remand redetermination, KYD filed a motion seeking reconsideration of that decision, and arguing for the first time that the new adverse rate of 94.62 percent was an excessive fine under the Eighth Amendment of the Constitution. *See, e.g. KYD V*, 836 F. Supp. 2d at 1413. The trial court rejected KYD's motion, in part, because KYD had failed to exhaust its administrative remedies with respect to this issue, and also, in part, because KYD had waived its argument by not raising this argument with respect to the 94.62 percent rate with the trial court in its remand comments or at any time preceding the issuance of its decision in *KYD IV*. *Id.* at 1413-14.

Citing to 28 U.S.C. §2637(d), the trial court explained that a "[p]laintiff must exhaust its administrative remedies 'where appropriate,'" and that the administrative

34

"exhaustion requirement serves to promote judicial efficiency and to protect the
legitimate exercise of agency authority." *Id.* at 1414 (citing to *Corus Staal BV*, 502
F.3d at 1379 (in which this Court held that it "generally takes a 'strict view' of the
requirement that parties exhaust their administrative remedies before the Department
of Commerce in trade cases").  The trial court explained that KYD was procedurally
required to raise its claim before Commerce at the time Commerce was addressing
the issue on remand and in light of this "litigation's long history, with multiple
remands," it was "particularly appropriate" for KYD to be required to exhaust its
administrative remedies by challenging the reduced margin at issue in the second
remand redetermination.  *Id.* (citing *Mittal Steel Point Lisas Ltd. v. United States*,
548 F.3d 1375, 1383 (Fed. Cir. 2008)).  Because KYD failed to exhaust its
administrative remedies with respect to this claim, the trial court therefore concluded
that KYD was foreclosed from arguing this issue in its motion for reconsideration.
*Id.*

The trial court found also that KYD failed to raise the issue in its remand
comments filed with the court following the issuance of the second remand
redetermination.  *Id*.  The trial court explained that all "claims, arguments and
objections [that a plaintiff has] elected not to address in its post-remand briefs must
be deemed waived."  *Id.* (quoting *Bond Street, Ltd. v. United States*, 774 F. Supp. 2d

35

1251, 1261 (2011)); s*ee also Novosteel SA v. United States*, 284 F. 3d 1261, 1274

(Fed. Cir. 2004).  The trial court concluded that KYD was obligated to raise its 8th

Amendment issue before this court in its comments on the second remand results,

and this was "not a case involving such 'significant questions of general impact or of

great public concern' as to excuse such a waiver." *Id.* (citing *Ninestar Tech. Co. v.*

*Int'l Trade Comm'n*, 667 F.3d 1373, 1382 (Fed. Cir. 2012)).  The trial court also

held that KYD had waived its ability to raise this issue in its motion for

reconsideration because it did not raise its claim "properly following the second

remand results." *Id.*

The trial court did not abuse its discretion when it rejected KYD's Eighth

Amendment argument as untimely on the basis of both administrative exhaustion

and waiver.  KYD does not, and cannot demonstrate the trial court's determination

was "clearly unreasonable, arbitrary or fanciful," or "clearly erroneous," *Hi-Shear*

*Technology Corp. v. U.S. Air*, 356 F.3d at 1378, when it failed to raise the issue

before Commerce and before the trial court.  Indeed, where KYD does not even

acknowledge the exhaustion issue, or the standard of abuse of discretion before this

Court, this Court should affirm the trial court's holding and reject KYD's Eighth

Amendment argument as procedurally deficient.

**IV.    Even If KYD Is Allowed To Raise Its Eighth Amendment Claim, Binding Precedent Demonstrates That The Adverse Rate Applied By Commerce To King Pak's and Master Packaging's Entries Does Not Violate The Constitution**

Finally, even if this Court were to consider KYD's Eighth Amendment argument, there still be would no validity to KYD's claim that the 94.62 percent rate violates the Eighth Amendment.  KYD alleges that it is "not challenging the per se Constitutionality of the Adverse Inferences provision," but in fact, that is exactly what KYD is doing – that the facts available provision of 19 U.S.C. §1677e and the importer payment provision of 19 U.S.C. §1673g(b)(4), working in tandem, allegedly violate the Eighth Amendment.  KYD's Brief at 17, n. 3.

Binding precedent from this Court has already addressed this exact issue.   In *KYD I* this Court concluded concluded that the rate applied to KYD's imports in that case – a higher rate than the rate applied in this case on remand – did not violate the Eighth Amendment.  *See KYD I,* 607 F.3d at 767-768 (noting that "an AFA dumping margin determined in accordance with the statutory requirements is not a punitive measure, and the limitations applicable to punitive damages assessments therefore have no pertinence to duties imposed based on lawfully derived margins such as the margin at issue in this case").  KYD does not, and cannot, distinguish the facts of this case from the binding Federal Circuit precedent.

Significantly, the Supreme Court in *United States v. Hosep Krikor Bajakajian*,

37

524 U.S. 321, 329 (1998), a case relied upon by KYD in its argument, held that the

Excessive Fines Clause of the Eighth Amendment does not apply to laws that "serve

the remedial purposes of compensating the Government for a loss." This Court has

already concluded that the antidumping duty laws are "remedial and not punitive."

*KYD I*, 607 F.3d at 767 (citing *NTN Bearing Corp. v. United States*, 74 F.3d 1204,

1208 (Fed. Cir. 1995) and *PAM v. United States*, 347 F. Supp. 2d 1362, 1370 (Ct.

Int'l Trade 2004)). Accordingly, the application of an adverse facts available rate to

the entries of noncooperative exporters does not violate the Eighth Amendment of

the Constitution, irrespective of the degree of participation of the importer in the

administrative proceedings.

On this basis, the trial court held in *KYD V* that the rate Commerce applied to

KYD was "reasonably remedial" and was "intended to aid the enforcement of tariff

regulations rather than to serve as a punitive sanction." *KYD V*, 836 F.Supp.2d at

1415 (citing also to *One Lot Emerald Cut Stones & One Ring v. United States*, 409

U.S. 232, 237 (1972), which held that a "customs statute permitting the civil

sanction of forfeiture is remedial, not punitive"). The trial court rejected KYD's

motion for reconsideration also on the basis that the rate selected by Commerce in

the second remand redetermination "(could) not violate the Eighth Amendment" of

the Constitution. *Id.* This decision is in accordance with law, and therefore, if the

38

Court chooses to consider KYD's Eighth Amendment arguments, it should

nonetheless affirm the trial court's holding in *KYD V* and reject KYD's Eighth

Amendment argument as without merit.

CONCLUSION

For these reasons, the United States respectfully requests that the Court affirm

the judgment of the trial court.

Respectfully submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney
General

JEANNE E. DAVIDSON
Director

/s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director

OF COUNSEL:

/s/ Carrie Dunsmore
CARRIE DUNSMORE
Trial Attorney

SCOTT D. MCBRIDE
Senior Attorney
Office of the Chief Counsel
 For Import Administration
U.S. Department of Commerce
Washington, D.C. 20230

Department of Justice, Commercial
Litigation Branch, Civil Division
PO Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7576
Fax: (202) 514-7969

December 27, 2012

Attorneys for Defendant-Appellee
United States

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitations of Fed. R. JA 32 (a)(7)(B) because:

1. This brief contains 8,369 words, excluding the parts of the brief exempted from Fed. R. A. Pr. 32(a)(7)(B)(iii).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Office Time New Roman 14 point font.


/s/ Carrie A. Dunsmore
Carrie A. Dunsmore
Attorney for Appellee

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on this 27th day of December, 2012, a copy of the foregoing

BRIEF OF DEFENDANT-APPELLEE, THE UNITED STATES

was filed electronically.

__X__ This filing was served electronically to all parties by operation of the Court's electronic filing system.

__/s/ Carrie A. Dunsmore